## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OKLAHOMA FIRST CAPITAL FUND X, INC., as authorized servicing agent for BFG 108, LLC, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. CIV-25-082-PRW |
| RBR GLOBAL, LLC, et al., ) ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendant RBR Global, LLC's and Richard DiBiase's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 20) and Defendant Raymond Carapella's Amended Motion to Dismiss Plaintiff's Complaint or In the Alternative Motion to Transfer Venue (Dkt. 22). These matters are fully briefed and ripe for decision. For the following reasons, the Court **GRANTS** the Motions (Dkts. 20, 22) and **DISMISSES** the Amended Complaint (Dkt. 5) **WITHOUT PREJUDICE**.

### *Background*

This case arises out of a contract dispute between BFG 108, LLC, RBR Global, LLC, Richard DiBiase and Raymond Carapella. BFG, a New York limited liability company, purchases accounts receivable from commercial entities, and those entities use the funds they receive to purchase receivables from smaller businesses that need immediate liquidity. RBR, a Florida limited liability company, is one of the commercial entities working with BFG. In April 2021, RBR entered into a Master Funding Agreement with

1

BFG wherein RBR agreed to convey certain future accounts receivable to BFG. In connection with the Master Funding Agreement, RBR executed four Purchase and Sale Agreements, in which the interests in receivables were transferred to BFG. RBR's principals, DiBiase and Carapella, signed performance guarantees and agreed to reimburse BFG if RBR failed to remit funds associated with those receivables or breached another part of the agreements. At no point during these exchanges did the parties do business or agree to do business in Oklahoma.

Texas First Capital Fund I, Inc. originally brought this suit on behalf of BFG as its servicing and litigation agent in the Western District of Oklahoma.[1] The Amended Complaint (Dkt. 5) alleges that RBR breached the Master Funding Agreement and subsequent Purchase and Sale Agreements by failing to remit funds, failing to obtain proper licenses in the jurisdictions in which it conducted business, and failing to disclose management and ownership changes. Further, DiBiase and Carapella, as guarantors, are liable for the damage resulting from RBR's alleged breach of contract. The Amended Complaint also includes claims for quantum meruit, promissory estoppel, common law fraud, and common law conversion.

RBR and DiBiase, filing jointly, and Carapella, filing separately, moved to dismiss this case for lack of personal jurisdiction and improper venue. Put generally, the Defendants argue that personal jurisdiction does not exist because (1) DiBiase and

---

[1] Texas First Capital filed for bankruptcy in December 2025. Oklahoma First Capital Fund X, Inc. has been substituted as the named plaintiff in this case and now serves as BFG's servicing agent.

Carapella are Florida residents, (2) RBR is "at home" in Florida, and (3) all three defendants have not purposefully directed any conduct towards Oklahoma with respect to injuries alleged in the Amended Complaint. Defendants also argue that venue is improper because none of the Defendants' alleged acts or omissions occurred within the Western District of Oklahoma.

### *Legal Standard*

The plaintiff has the burden of establishing that personal jurisdiction exists.[2] When addressing a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.[3] "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."[4] To defeat a plaintiff's prima facie showing, a defendant must show "that the presence of some other considerations would render jurisdiction unreasonable."[5] The Court resolves all factual disputes in favor of the plaintiff.[6]

---

[2] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[3] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

[4] *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

[5] *Id.*

[6] *Old Republic*, 877 F.3d at 903.

*Discussion*

## I.    Personal Jurisdiction

"A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process."[7] Because Oklahoma law permits courts to "exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States,"[8] "the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry."[9]

Exercising jurisdiction over a nonresident defendant "comports with constitutional due process" if there are "sufficient 'minimum contacts between the defendant and the forum state,'"[10] such that "having to defend the lawsuit there would not offend traditional notions of fair play and substantial justice."[11] Those minimum contacts may support general or specific jurisdiction.[12] But because general jurisdiction isn't related to "events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the

---

[7] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

[8] Okla. Stat. tit. 12, § 2004(F).

[9] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012).

[10] *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[11] *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022).

[12] *XMission*, 955 F.3d at 840.

plaintiff to demonstrate the defendant's continuous and systematic general business contacts."[13]

### A.    General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."[14] A corporation is "at home" where its state of incorporation and principal place of business is. And courts have routinely applied the personal jurisdiction rules regarding corporations to limited liability companies.[15]

With respect to the individual defendants, both DiBiase and Carapella are residents of Florida. Thus, DiBiase and Carapella are not subject to general jurisdiction in Oklahoma.

General jurisdiction for RBR is more complicated. Although RBR is incorporated and has its principal place of business in Florida, as Plaintiff admits, general jurisdiction for business entities can extend further. Precisely, "in an exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State."[16] Courts in the Tenth Circuit have applied

---

[13] *Old Republic*, 877 F.3d at 904.

[14] *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[15] *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n. 10 (5th Cir. 2020) (collecting cases); *see Avus Designs, Inc. v. Grexxx, LLC*, 644 F. Supp. 3d 963, 974–82 (D. Wyo. Dec. 2, 2022) (discussing the debate over what "at home" means for LLCs and holding that an LLC should not be considered "at home" based on the citizenship of each member).

[16] *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 402 (D.N.M. May 28, 2015) (applying this rule to LLCs).

the following factors to decide whether a defendant's contacts with the forum state trigger general jurisdiction:

> whether the [entity] solicits business in the state through a local office or agents; (2) whether the [entity] sends agents into the state on a regular basis to solicit business; (3) the extent to which the [entity] holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the [entity].[17]

These factors weigh in favor of the finding that the Court lacks general jurisdiction over RBR. RBR has never had any offices, employees, business licenses or authorizations, or bank accounts in Oklahoma.[18] Plaintiff points to two UCC-1 Financing Statements, filed by RBR with the County Clerk's Office in Oklahoma, to argue RBR has made itself "at home" in the forum state.[19] But these two statements, used to perfect RBR's lender-rights and preserve its priority status among other creditors, are insignificant. Because RBR's contacts with Oklahoma are not systemic and continuous, the Court finds that it cannot exercise general personal jurisdiction over RBR.

## B.    Specific Jurisdiction

Since general jurisdiction does not exist, the Court must decide whether it can exercise specific jurisdiction over RBR, Dibiase, and Carapella. Specific jurisdiction "allows a court to exercise jurisdiction over an out-of-state defendant only for claims

---

[17] *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1533 (10th Cir. 1996).

[18] RBR & DiBiase's Mot. (Dkt. 20), at 2.

[19] Plf.'s Resp. to Dkt. 20 (Dkt. 24), at 10.

related to the defendant's contacts with the forum State."[20] Specific jurisdiction requires the plaintiff to show that the defendant has "minimum contacts" with that State.[21]  To meet the minimum-contacts requirement, a plaintiff must show that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"[22] If the plaintiff makes this showing, the court then determines whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice."[23]

Because Plaintiff plainly fails the second prong of the minimum-contacts requirement, the Court begins there. Plaintiff contends that "more than a half-million dollars' worth of funding was supplied to [Oklahoma-based merchant-borrowers] and the accounts receivables that are to be paid to RBR from the merchants as compensation were transferred to BFG[.]"[24] But Plaintiff does not go further and explain how these accounts relate to its contract and tort claims.[25] Chiefly, Plaintiff does not indicate whether RBR transferred those Oklahoma-based accounts receivables pursuant to the Master Funding Agreement, the Purchase and Sale Agreements, or the performance guaranties, let alone

---

[20] *XMission*, 955 F.3d at 840.

[21] *Old Republic*, 877 F.3d at 904.

[22] *See XMission*, 955 F.3d at 840 (quoting *Burger King Corp.*, 471 U.S. at 472); *see also Old Republic*, 877 F.3d at 904.

[23] *Id.* at 908–09.

[24] Plf.'s Resp. to Dkt. 20 (Dkt. 24), at 15.

[25] *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (requiring the plaintiff to make a prima facie showing of personal jurisdiction for each claim alleged).

whether Plaintiff's injuries are traceable to those Oklahoma-based accounts. All agreements at issue solely concern parties in New York (e.g., BFG) and Florida (e.g., RBR, DiBiase, and Carapella) and required BFG to advance funds to RBR in exchange for the sale of certain accounts receivable. The fact that some of those accounts were owed by Oklahoma debtors does not change the relationship between the actual parties to the agreements—this connection is far too attenuated to support specific jurisdiction.[26]

Accordingly, the Court finds that it cannot exercise either general or specific personal jurisdiction over RBR, DiBiase, or Carapella.

## II. Jurisdictional Discovery

In its responses to the Motions (Dkts. 20, 22), Plaintiff asks the Court to allow it to conduct sixty-days of jurisdictional discovery if the Court finds that jurisdiction is improper. But Local Rule 7.1(c) prohibits a response to a motion from including a motion or cross-motion. Plaintiff, here, has not independently moved for leave to conduct jurisdictional discovery. The Court, therefore, denies Plaintiff's request for jurisdictional discovery.

---

[26] *Id.* at 1230 (finding no personal jurisdiction where "the transactions implicated Oklahoma in only an attenuated fashion, as [the plaintiff] serves as a broker in transactions between dentists located across the United States").

*Conclusion*

The Court **GRANTS** the Motions (Dkts. 20, 22) and **DISMISSES** the Amended

Complaint (Dkt. 5) **WITHOUT PREJUDICE**. A separate judgment will follow.

    **IT IS SO ORDERED** this 5th day of March 2026.

                                                  _____

                                                  PATRICK R. WYRICK
                                                  UNITED STATES DISTRICT JUDGE